GLADYS BROWN v. CAROLL M. BROWN

No. 77A00

Filed 21 December 2000

**1. Appeal and Error— deceased party—motion by adminis-
tratrix to be substituted as plaintiff—appeal allowed
under Rule 2**

An appeal was properly before the Supreme Court where
plaintiff died shortly after filing for equitable distribution and
divorce, the administratrix of her estate moved to be substituted
as plaintiff, the trial court denied the motion and dismissed the
action, plaintiff's counsel filed a notice of appeal, and the Court
of Appeals treated this as a petition for certiorari. Utilization of a
writ of certiorari is not appropriate under these facts and Rule 38
of the Rules of Appellate Procedure does not address the unusual
circumstances of this case; however, in order to address the
issues, the provisions of Rule 2 were used to vary the require-
ments of Rule 38.

**2. Divorce— equitable distribution—plaintiff deceased
between filing of action and granting of judgment—abate-
ment of claim**

The trial court correctly dismissed plaintiff's case and the
Court of Appeals erred by reversing the trial court when the
claim of a plaintiff in an action for divorce and equitable distrib-
ution abated when plaintiff died before the trial court entered a
divorce decree or an equitable distribution judgment. A careful
consideration of N.C.G.S. §§ 50-20 and -21 indicates that the
General Assembly intended equitable distribution actions to be
available only when there has been a divorce or when there is
anticipation of the parties getting a divorce. The most recent
amendment, which served as the premise of plaintiff's argument
and the Court of Appeals decision, removes all limitations on the
timing of an equitable distribution judgment vis-a-vis the granting
of a divorce (the original version provided that a judgment for
equitable distribution shall not be entered prior to the entry of a
decree of absolute divorce), but there is no indication that this
declaration was intended to remove the link between a divorce
proceeding and a request to distribute property acquired during
the marriage.

**BROWN v. BROWN**

[353 N.C. 220 (2000)]

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 136 N.C. App. 331, 524 S.E.2d 89 (2000), reversing and remanding an order signed 6 August 1998 by Magee, J., in District Court, Gaston County. Heard in the Supreme Court 12 September 2000.

*Max L. Childers for plaintiff-appellee.*

*Michelle D. Reingold for defendant-appellant.*

ORR, Justice.

Defendant presents a single argument for our consideration: Did the Court of Appeals err in concluding that equitable distribution does not abate if one of the parties dies after filing for equitable distribution and divorce, but before receiving an equitable distribution judgment or an absolute divorce decree? We hold that the Court of Appeals erred in its decision.

We begin by explaining the unique procedural posture of this case. Plaintiff Gladys Brown died shortly after filing the lawsuit out of which this appeal arises. The administratrix of her estate, Martha T. Russell, moved to be "substituted as [p]laintiff" and "allowed to proceed as [p]laintiff in this matter." The trial court denied this motion and dismissed plaintiff's action on 6 August 1998.

[1] Plaintiff's counsel filed a notice of appeal on 13 August 1998, stating that "[p]laintiff, through counsel, . . . gives Notice of Appeal." The Court of Appeals treated this appeal as a petition for a writ of certiorari and allowed it so that it could review the order of the trial court. However, utilization of a writ of certiorari is not appropriate under these facts. *See Bailey v. State,* —— N.C. ——, ——, —— S.E.2d ——, ——, slip op. at —— (Dec. 21, 2000) (No. 56PA00-2).

As a result, this Court faces a procedural dilemma in that the appeal to the Court of Appeals was made on behalf of a deceased party, and the appearance in this Court in response to defendant's appeal was likewise made on behalf of a deceased party. Therefore, in order to address the merits of the issues brought forward, we deem it necessary to use the provisions of Rule 2 of the North Carolina Rules of Appellate Procedure to vary the requirements of Rule 38 of the North Carolina Rules of Appellate Procedure.

Rule 2 allows the Court "[t]o prevent manifest injustice to a party . . . [by varying] the requirements or provisions of any of [the

North Carolina Rules of Appellate Procedure] in a case pending before it . . . upon its own initiative." N.C. R. App. P. 2.

Rule 38 provides: "If a party entitled to appeal dies before filing a notice of appeal, appeal may be taken by his personal representative or if he has no personal representative, by his attorney of record . . . ." N.C. R. App. P. 38. We acknowledge that Rule 38 does not address the unusual circumstances of this case. Here, plaintiff died before she was entitled to an appeal. We believe, however, that the specific facts of this case and Rule 2 allow us to vary Rule 38 so that plaintiff may take the appeal by plaintiff's attorney of record. Therefore, we deem the appeal properly before us and proceed to address the merits.

[2] The relevant facts in this case show that plaintiff Gladys Brown and defendant Carroll M. Brown married in 1976 and separated in 1997. Six days after they separated, plaintiff filed a complaint requesting equitable distribution and related collateral relief, a divorce from bed and board, alimony *pendente lite*, and permanent alimony. Plaintiff, however, died before the trial court entered either a divorce decree or a final equitable distribution judgment. Her administratrix filed a motion on 19 February 1998 requesting "that she be substituted as [p]laintiff in the place of Gladys Brown, deceased, and that she be allowed to proceed as [p]laintiff in this matter." The trial court denied that motion and dismissed all of plaintiff's claims because it found that "[e]ach claim filed by the [p]laintiff abated upon [p]laintiff's death." Plaintiff, through counsel of record, appealed the trial court's decision, claiming in part that the trial court improperly dismissed the equitable distribution action and that the trial court should have substituted the administratrix for the plaintiff in the equitable distribution action. A divided Court of Appeals reversed the trial court on both issues. The Court of Appeals did so because the majority held that equitable distribution actions survive even if one of the parties dies before a court enters an absolute divorce decree.

It is settled law in North Carolina that the death of one of the parties abates an action for divorce. *Elmore v. Elmore*, 67 N.C. App. 661, 313 S.E.2d 904 (1984). The original version of the Equitable Distribution Act provided in N.C.G.S. § 50-21 provides that "[a] judgment for equitable distribution shall not be entered prior to the entry of a decree of absolute divorce." Thus, as held in *Caldwell v. Caldwell*, 93 N.C. App. 740, 379 S.E.2d 271, *disc. rev. denied*, 325 N.C. 270, 384 S.E.2d 513 (1989), equitable distribution and divorce were

**BROWN v. BROWN**

[353 N.C. 220 (2000)]

inextricably linked, and if the possibility of divorce was eliminated by the death of a party, there was no question that the ability to continue an equitable distribution action would abate. However, as a result of an amendment to N.C.G.S. § 50-21 in 1995, plaintiff argues and the Court of Appeals majority held, an equitable distribution action would not abate, even where, as here, a party dies prior to either an equitable distribution judgment being entered or a divorce granted.

We first look to N.C.G.S. §§ 50-20 and -21 because these statutory provisions articulate the right to equitable distribution and the procedure to be followed. In fact, prior to the 1981 passage of the Equitable Distribution of Marital Property Act, North Carolina courts, quite literally, lacked the power to transfer real property, or any interest therein, upon divorce. *See* Sally Sharp, *The Partnership Ideal: The Development of Equitable Distribution in North Carolina*, 65 N.C. L. Rev. 195, 196-97 (1987). We therefore must look to the intent of the legislature to determine if equitable distribution is available when divorce is not. *State v. Oliver*, 343 N.C. 202, 212, 470 S.E.2d 16, 22 (1996) (holding that the cardinal principle of statutory construction is that the intent of the legislature controls). We conclude that a careful consideration of N.C.G.S. §§ 50-20 and -21 indicates that the General Assembly intended equitable distribution actions to be available only when there has been a divorce or when there is anticipation of the parties getting a divorce.

We acknowledge that the language of N.C.G.S. §§ 50-20 and -21 does not specifically address the issue before us. N.C.G.S. § 50-21(a) provides in part that "[a]t any time after a husband and wife begin to live separate and apart from each other, a claim for equitable distribution *may be filed.*" N.C.G.S. § 50-21(a) (1999) (emphasis added). That statute addresses the filing of an equitable distribution action but does *not* address the relationship of an equitable distribution judgment to divorce or the possibility of divorce.

The context and legislative history of N.C.G.S. §§ 50-20 and -21, however, show that equitable distribution actions invariably contemplate divorce. Courts may refer to the context of an act to infer legislative intent when the meaning of a statute is in doubt. *Sykes v. Clayton*, 274 N.C. 398, 406, 163 S.E.2d 775, 781 (1968). Discussion of equitable distribution is limited nearly completely to chapter 50 of the General Statutes, a chapter titled "Divorce and Alimony," and all issues addressed in chapter 50 concern the dissolution of marriage.

N.C.G.S. §§ 50-1 to -60 (1999). Discussion of equitable distribution is further limited to article 1 of that chapter, an article titled, "Divorce, Alimony, and Child Support, Generally." N.C.G.S. §§ 50-1 to -23. The substantive rights provided by equitable distribution are described in N.C.G.S. § 50-20, a section titled, "Distribution by court of marital and divisible property *upon divorce*." N.C.G.S. § 50-20 (emphasis added). It is reasonable to thus infer that the General Assembly intended equitable distribution to be linked with divorce and did not intend equitable distribution to proceed where there is no divorce and no possibility of a final divorce decree, such as we have in this case.

The General Assembly's intent to link equitable distribution and divorce can also be seen in the title of the act that most recently amended N.C.G.S. § 50-21(a). Although the title of an act cannot control when the text is clear, *In re Appeal of Forsyth County*, 285 N.C. 64, 71, 203 S.E.2d. 51, 55 (1974), the title is an indication of legislative intent, *Smith Chapel Baptist Church v. City of Durham*, 350 N.C. 805, 812, 517 S.E.2d 874, 879 (1999). The General Assembly titled the act that amended N.C.G.S. § 50-21(a), "An Act to Allow Claims for Equitable Distribution to be Resolved *Either Before or After an Absolute Divorce is Granted* . . . ." Act of June 14, 1995, ch. 245, 1995 N.C. Sess. Laws 510 (emphasis added). This title makes clear that the General Assembly did not intend its amendment to completely sever equitable distribution claims from divorce proceedings; it meant only to expand the timing in which an equitable distribution action may be filed and judgment entered. This legislative history and the context of the statute convince us that equitable distribution actions are so related to divorce proceedings that when death ends all chance for divorce, any equitable distribution action then pending must abate.

N.C.G.S. § 50-20, which addresses the procedure for a court to distribute "marital and divisible property *upon divorce*," provides additional support for our conclusion. N.C.G.S. § 50-20 (emphasis added). This statute carefully describes the factors the trial court should consider, weigh, and balance when it equitably distributes marital property. In evaluating these factors, the trial court must consider the contemplated or prior divorce of the parties. Otherwise, the factors would be senseless. The trial court does not simply distribute the property between the parties, but considers, for example, their estates, income, and financial liabilities. When the court is asked to equitably distribute marital and divisible property, it must anticipate that the parties will at some time be independent, divorced indi-

viduals.[1] This responsibility reinforces our perception that the General Assembly intended to link equitable distribution and divorce so closely that the death of one party before the entry of a divorce decree requires the abatement of any pending equitable distribution action.

The premise of plaintiff's argument and the Court of Appeals' decision is that the most recent amendment of N.C.G.S. § 50-21 mandates a contrary conclusion. See ch. 245, 1995 N.C. Sess. Laws 510. In 1995, the General Assembly deleted the following text from N.C.G.S. § 50-21(a):

> A judgment for equitable distribution shall not be entered prior to entry of a decree of absolute divorce, except for a consent judgment, which may be entered at any time during the pendency of the action, or except if the parties have been separated for at least six months and they consent, in a pleading or other writing filed with the court, to an equitable distribution trial prior to the entry of the decree for absolute divorce.

Ch. 245, sec. 1, 1995 N.C. Sess. Laws at 511.

We believe the General Assembly never meant this change to remove the link between equitable distribution and divorce. The changes the General Assembly made to N.C.G.S. § 50-21 between 1981 and 1995 indicate that the legislators meant this most recent change to place no limit on the time in which a court could enter an equitable distribution judgment. The original version of N.C.G.S. § 50-21 provided that "[a] judgment for equitable distribution shall not be entered prior to the entry of a decree of absolute divorce." N.C.G.S. § 50-21(a) (1981) (amended 1989). The 1989 amendment to the statute allowed courts to enter equitable distribution judgments before a final divorce decree upon entry of a consent judgment. N.C.G.S. § 50-21(a) (1989) (amended 1991). The 1991 amendment allowed courts to enter equitable distribution judgments before entering a divorce decree, either through a consent judgment or when an incompetent spouse was involved. N.C.G.S. § 50-21(a) (1991) (amended 1995). The 1992 amendment again expanded the time in which a court could enter a judgment of equitable distribu-

---

1. This reasoning does not contradict *Tucker v. Miller*, 113 N.C. App. 785, 440 S.E.2d 315 (1994), in which the Court of Appeals held that an equitable distribution action survived a party's death when the trial court had already entered a decree of absolute divorce. *Id.* at 788, 440 S.E.2d at 317. In this case, however, the trial court had not entered a divorce decree.

tion; it allowed a court to enter an equitable distribution judgment before a divorce decree through a consent judgment, when an incompetent spouse was involved, *or* when the parties were separated for six months and consented in writing to allow the court to determine equitable distribution. N.C.G.S. § 50-21(a) (1992) (amended 1995). Because each of these amendments aimed to change only when a court could enter an equitable distribution judgment in relationship to a divorce being granted, we believe the most recent amendment of N.C.G.S. § 50-21 was similarly intended.

By deleting the provision previously noted, the General Assembly eliminated the exceptions that had been engrafted over the years on the original mandate that equitable distribution could not be ordered until a divorce decree was entered. The amendment thus removes all limitations on the timing of an equitable distribution judgment, *vis-a-vis* the granting of divorce. We find no indication, however, that this deletion was intended to remove the link between a divorce proceeding and a request to the court to distribute property acquired during the marriage. Therefore, we conclude that the 1995 amendment to N.C.G.S. § 50-21 did not change the relationship between equitable distribution and divorce. Instead, the amendment continued the legislative trend for equitable distribution to occur at any time prior to or after an absolute divorce.

The Court of Appeals also relied in part on the provisions of N.C.G.S. § 50-20(k). The General Assembly passed N.C.G.S. § 50-20(k) in 1981. Act of July 3, 1981, ch. 815, 1981 N.C. Sess. Laws 1184. At the same time, and *in the same act*, it also passed the original version of N.C.G.S. § 50-21(a), ch. 815, sec. 6, 1981 N.C. Sess. Laws at 1186, which provided, in pertinent part, that "[a] judgment for equitable distribution *shall not be entered* prior to the entry of a decree of absolute divorce," *see* N.C.G.S. § 50-21(a) (1981) (amended 1989) (emphasis added), and clearly indicated that equitable distribution depended on divorce, *Caldwell*, 93 N.C. App. 740, 379 S.E.2d 271. Thus, the General Assembly cannot have intended N.C.G.S. § 50-20(k) to mean that equitable distribution could proceed without divorce unless it meant to directly contradict itself in N.C.G.S. § 50-21(a). Courts, of course, presume that the General Assembly would not intend something so absurd as contradicting itself in the same statute. *In re Brake*, 347 N.C. 339, 341, 493 S.E.2d 418, 420 (1997) (holding that when the Supreme Court construes statutes, it presumes that the legislature acted in accordance with reason and common sense). N.C.G.S. § 50-20(k), therefore, did not indicate that equi-

table distribution was independent of the possibility of divorce in 1981, nor does it indicate that now. N.C.G.S. § 50-20(k) does not contradict our holding that the General Assembly did not intend a trial court to be able to enter an equitable distribution judgment when there is no divorce and no possibility of divorce.

In sum, equitable distribution is a statutory right defined by N.C.G.S. §§ 50-20 and -21 and is inextricably linked with divorce proceedings. Because death ends any chance for divorce and because plaintiff in the instant case died before the trial court entered a divorce decree, plaintiff's claim for equitable distribution abated, and the trial court correctly dismissed plaintiff's case. We therefore reverse the Court of Appeals and reinstate the holding of the trial court.

REVERSED.