Deborah R. DAVENPORT, Plaintiff,

v.

ROBERT H. DAVENPORT, D.D.S., M.S., P.A., Robert H. Davenport, D.D.S., M.S., P.A., Profit Sharing Plan and Trust, and William E. Wheeler, individually and as Administrator of Robert H. Davenport, D.D.S., M.S., P.A., Profit Sharing Plan and Trust, Defendants and Third Party Plaintiffs

v.

Estate of Robert H. Davenport, Jr., by and through its Executor, Virginia Jane Davenport Jones, Third Party Defendant and Claimant in Interpleader,

and

Deborah R. Davenport, Claimant in Interpleader.

No. 1:00CV00433.

United States District Court, M.D. North Carolina.

April 20, 2001.

Martin N. Erwin, Smith Helms Mulliss & Moore, Greensboro, NC, for Deborah R. Davenport, plaintiff.

Debbie Weston Harden, Womble Carlyle Sandridge & Rice, Charlotte, NC, for Robert H. Davenport, D.D.S., M.S., P.A., Robert H. Davenport, D.D.S., M.S., P.A. Profit Sharing Plan and Trust, William E. Wheeler, individually and as Administrator of Robert H. Davenport, D.D.S., M.S., P.A. Profit Sharing Plan and Trust, defendants.

A. Doyle Early, Jr., Wyatt Early Harris & Wheeler, L.L.P., High Point, NC, for Estate of Robert H. Davenport, Jr.

## MEMORANDUM OPINION

BEATY, District Judge.

This matter comes before the Court pursuant to Plaintiff Deborah R. Davenport's Motion for Judgment on the Pleadings [Document # 19] and Third Party Defendant Estate of Robert H. Davenport's Motion to Stay [Document # 15]. For the reasons that follow, Plaintiff's Motion for Judgment on the Pleadings is GRANTED and Third Party Defendant's Motion to Stay is DENIED.

## I. FACTUAL BACKGROUND

Plaintiff Deborah R. Davenport ("Plaintiff") and Dr. Robert Davenport ("Dr. Davenport" or "Decedent") were married on May 22, 1992. On May 24, 1999, for unspecified reasons, the Davenports separated. On June 22, 1999, Plaintiff filed an action in the District Court of Guilford County, seeking post-separation support, alimony, equitable distribution, and reasonable attorney's fees. Shortly thereafter, Dr. Davenport filed for an extension of time to answer Plaintiff's complaint and, during that time, executed a new will, leaving his entire estate to his four children. Dr. Davenport then committed suicide on August 7, 1999. At the time of Decedent's death, the Davenports were still living separate and apart, but had not yet divorced.

During the course of the Davenports' marriage, and for many years prior to Decedent's death, Decedent practiced periodontic dentistry in a professional association known as Robert H. Davenport,

D.D.S., M.S., P.A. (the "Corporation"). The Corporation was one of the original defendants in this suit, but was later dismissed as a defendant, pursuant to a consent agreement entered into by the parties. Acting through the Corporation, Decedent established the Robert H. Davenport, D.D.S., M.S., P.A. Profit Sharing Plan and Trust, a defined contribution retirement plan (the "Plan"), for the benefit of the Corporation's employees. The Plan was also an original defendant in this case, but was later dismissed pursuant to the consent agreement.[1]

Plaintiff formerly worked for the Corporation and is, therefore, a participant in the Plan. Decedent was also a Plan participant at the time of his death. As required by ERISA, the Plan provided for benefits to be paid to a "surviving spouse," and Plaintiff is the surviving spouse of Decedent as that term is defined by ERISA.[2] The current value of Dr. Davenport's interest is $1,047,882, and the current value of Plaintiff's interest is $88,241.00.

Upon Dr. Davenport's death, Virginia Jane Davenport Jones, Decedent's daughter, became the executor of Decedent's estate ("Estate," "Third Party Defendant," or "Defendant"). Plaintiff then voluntarily dismissed her equitable distribution action in state court on August 19, 1999, before the Estate filed an answer and counterclaim. On October 28, 1999, Plaintiff submitted her claim as a participant and as a surviving spouse beneficiary to former Defendant Wheeler, as the alleged Administrator of the Plan. However, according to Plaintiff, by letter dated November 5, 1999, Defendant Wheeler denied Plaintiff's claim for benefits, notified Plaintiff that he had instituted an action against her on behalf of the executor of Dr. Davenport for equitable distribution under state law, and informed Plaintiff that he had instructed the custodian of the Plan's assets to make no distribution to Plaintiff until the action for equitable distribution was resolved. The Estate, on November 5, 1999, did file a claim in Guilford County District Court for equitable distribution, seeking, among other things, to have Plaintiff's benefits, both as a Plan participant and as a surviving spouse beneficiary, treated as marital property and divided between the Estate and Plaintiff. On January 4, 2000, Plaintiff moved to dismiss that action pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure, for failure to state a claim upon which relief could be granted. Specifically, Plaintiff alleged that an estate is not a proper party in an equitable distribution action and that no such action could be brought after the death of one of the spouses. Plaintiff's motion was denied by the Guilford County District Court on April 11, 2000. The Estate's claim for equitable distribution is still pending in state court.

1. Per the consent agreement, the Plan assets will remain in the Trust held by First Union National Bank under the same investment manager and investment strategy, unless otherwise agreed to by the Estate and Plaintiff; the funds will remain under the exclusive jurisdiction of this Court, pending resolution of this action, subject to payment of administrative fees, costs, and expenses of the Plan; all of Plaintiff's claims against the Plan, the Corporation, and Mr. Wheeler as an individual or as the alleged Administrator of the Plan are dropped, except as they relate to attorney's fees and costs; and the Court retains jurisdiction over all parties, per the agreement, to determine whether attorney's fees and costs with respect to this matter should be taxed against any party. (Consent Order of Dismissal of Defs. and Third Party Pls. at 5–6.)

2. Pursuant to ERISA, a qualifying plan must entitle the surviving spouse to at least one half of the participant's benefits under the plan at the participant's death. 29 U.S.C. §§ 1055(a)(2), (e)(2).

To date, Plaintiff has not received any of her benefits under the Plan, either as a Plan participant or a surviving spouse. Plaintiff, therefore, instituted this action pursuant to ERISA, 29 U.S.C. § 1001, *et seq.*, as authorized by 29 U.S.C. § 1132, seeking the benefits to which she is entitled under the Plan, and pursuant to Rule 57 of the Federal Rules of Civil Procedure and the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, seeking a judicial declaration that her benefits under the Plan, both as a participant and as a surviving spouse beneficiary, are rightfully hers, that her benefits are inalienable, and that any state law allowing her benefits to be alienated is preempted by ERISA. Plaintiff also seeks attorney's fees in this action. The Plan's attorney answered Plaintiff's Complaint, impleaded the Estate as a third party defendant, and counterclaimed and cross-claimed for interpleader, seeking permission to pay the Plan benefits into Court because of the conflicting claims of the Estate and Plaintiff and to be dismissed from the action. The Estate filed an answer and a counterclaim against Plaintiff, seeking a declaration that the Estate may be entitled to the proceeds of the Plan as marital property. There has been no objection to interpleader.

This matter is presently before the Court, on Plaintiff's Motion for Judgment on the Pleadings. The Estate in this case has also filed a Motion to Stay, alleging that Plaintiff's ERISA issues should be decided by the state court for the following reasons: (1) several factors govern in favor of a stay; (2) a related matter is currently pending in state court; and (3) the state court's ruling on certain domestic issues, those are, equitable distribution, abandonment, and whether or not to enter a qualified domestic relations order in favor of Decedent's children, could affect this Court's determination of the ERISA questions. Before addressing either Plaintiff's Motion for Judgment on the Pleadings, or Defendant's Motion to Stay, the Court finds it necessary, as an initial matter, to discuss ERISA and its mandates, because the terms of the statute govern how the Court should rule as to both motions.

## II. *INTRODUCTION TO ERISA*

■ With some limited exceptions not relevant to this case, ERISA requires all pension plans to provide an annuity to the surviving spouse of a plan participant who dies before retirement (hereinafter, such an annuity is termed a "qualified preretirement survivor annuity" or a "QPSA"), *see* 29 U.S.C. § 1055(a)(2). Additionally, ERISA provides that participant benefits *may not be assigned or [otherwise] alienated,* 29 U.S.C. § 1056(d)(1), and that its regulations are to "supersede *any and all* State laws insofar as they . . . relate to any employee benefit plan . . . ." 29 U.S.C. § 1144(a) (emphasis added).[3] After ERISA was enacted, courts were divided on whether the complete restriction on alienation of pension plans preempted state domestic relations laws that attempted to divide marital property (i.e., through equitable distribution and related proceedings). *See, e.g., Ross v. Ross,* 308 N.J.Super. 132, 705 A.2d 784, 793 (1998). In 1984, Congress responded to this conflict among the courts by enacting the Retirement Equity Act of 1984 ("REA"), Pub.L. No. 98–397, 98 Stat. 1426 (codified at 29 U.S.C. § 1001, *et seq.*). REA created a limited exception to ERISA preemption by allowing pension plan benefits to be divid-

---

**3.** In *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 96, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983), the Court explained that "[a] law 're-
lates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan."

ed pursuant to state law, where a valid qualified domestic relations order ("QDRO") exists. 29 U.S.C. § 1144(b)(7); 29 U.S.C. § 1056(d)(3)(A); S.Rep. No. 98–575, at 19 (1984), *reprinted in* 1984 U.S.C.C.A.N. 2547, 2565 (explaining that only "qualified" domestic relations orders are exempt from ERISA's spendthrift provisions). Consequently, with respect to pension plans, ERISA preempts all marital dissolution decrees that do not meet the statutory definition of a QDRO. *See, e.g., Boggs v. Boggs,* 520 U.S. 833, 844, 117 S.Ct. 1754, 1762, 138 L.Ed.2d 45 (1997) (explaining that states are not free to change ERISA's structure and balance), *reh'g denied,* 521 U.S. 1138, 118 S.Ct. 9, 138 L.Ed.2d 1043 (1997). ERISA defines a "domestic relations order" as any judgment, decree, or order that "(I) relates to the provision of child support, alimony payments, or marital property rights to a spouse, former spouse, child, or other dependent of a participant, and (II) is made pursuant to State domestic relations law . . . ." 29 U.S.C. § 1056(d)(3)(B)(ii). A domestic relations order is "qualified," if, among other things, it gives an alternate payee the right to "receive all or a portion of the benefits payable with respect to a participant under a plan . . . ." 29 U.S.C. § 1056(d)(3)(B)(i)(I) (emphasis added).

Given ERISA's dictates, any equitable distribution or domestic relations order that a state court might enter with respect to either survivor benefits or participant benefits, that does not qualify as a QDRO, is preempted by ERISA. *See* 29 U.S.C. § 1056(d)(3)(A); S.Rep. No. 98–575, at 19, *reprinted in* 1984 U.S.C.C.A.N., at 2565; *Boggs,* 520 U.S. at 844–846, 117 S.Ct. at 1762–67 (all instructing that other domestic relations orders are expressly made subject to the anti-assignment provision and are, as a result, preempted). Absent a QDRO, the only way a participant can alter the designated beneficiary of surviv-

ing spouse benefits is by obtaining consent from the surviving spouse, or unless one of the exceptions to the need for spousal consent applies. *See* 29 U.S.C. §§ 1055(c)(1)(A)(i)-(ii), (c)(2) (establishing that a surviving spouse may waive spousal benefits by expressly consenting in writing to the designation of a different beneficiary or by impliedly consenting through various means). Specifically, REA provides that no consent is necessary where "it is established to the satisfaction of a plan representative that the consent required . . . may not be obtained because there is no spouse, because the spouse cannot be located, or because of such other circumstances as the Secretary [of the Treasury] may by regulations prescribe." 29 U.S.C. § 1055(c)(2)(B). In 1988, the Secretary of the Treasury promulgated a regulation providing that if "the participant is legally separated or the participant has been abandoned (within the meaning of local law) and the participant has a court order to such effect . . . ," 26 C.F.R. § 1.401(a)–20, A–27 (1991), the participant does not need consent from the beneficiary spouse to alter the designated beneficiary.

The foregoing provisions are instructive with respect to this case because Plaintiff claims in her Motion for Judgment on the Pleadings that she is entitled to her benefits as a plan participant and to her benefits as Decedent's surviving spouse, and that Defendant is precluded by ERISA from attempting to alienate those benefits. ERISA's restrictions are also instructive to the extent that Defendant bases its Motion to Stay on the proposition that a valid QDRO and abandonment order may be issued by the state court at this point, presumably as part of the equitable distribution proceeding, thus allowing the Estate to alter the beneficiary currently named in Decedent's plan. In view of ERISA's requirements and all of the fore-

going facts, this Court next turns its attention to Defendant's Motion to Stay, given that a determination of this issue is necessary before a ruling may be made on Plaintiff's Motion for Judgment on the Pleadings.

## III. MOTION TO STAY

Two standards exist for assessing the appropriateness of a stay in deference to concurrent state court proceedings: the exceptional circumstances test and the *Brillhart* discretionary standard. Defendant argues that a stay is warranted in this case, under both standards. Each standard is next briefly addressed in turn.

### A. Exceptional Circumstances Test

■ Under the exceptional circumstances test, as the name implies, a district court should not grant a stay in deference to concurrent state court proceedings absent exceptional circumstances. *See McLaughlin v. United Virginia Bank*, 955 F.2d 930, 934 (4th Cir.1992). The following four nonexclusive factors established by the Supreme Court in *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 818, 96 S.Ct. 1236, 1247, 47 L.Ed.2d 483 (1976), *reh'g denied*, 426 U.S. 912, 96 S.Ct. 2239, 48 L.Ed.2d 839 (1976), help to establish whether such exceptional circumstances exist: (1) whether the state court has assumed jurisdiction over a res; (2) the inconvenience of the federal forum; (3) avoidance of piecemeal litigation; and (4) the order in which jurisdiction was obtained by the concurrent forums. *See id.* (citations omitted). In addition to the four factors expressly discussed by the Supreme Court in *Colorado River,* there is another factor that emerges from *Will v. Calvert Fire Ins. Co.,* 437 U.S. 655, 98 S.Ct. 2552, 57 L.Ed.2d 504 (1978), that is, whether federal law provides the rule of decision on the merits. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 23, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983).

### 1. Jurisdiction over a Res

■ According to Defendant, a stay should be granted in this case because the state district court has clearly asserted jurisdiction over all of Decedent's and Plaintiff's marital assets, including the pension and profit sharing funds at issue in this case. Defendant bases its argument on the equitable distribution proceeding currently pending in state court. However, given the North Carolina Supreme Court's recent decision in *Brown v. Brown,* 353 N.C. 220, 539 S.E.2d 621, *reh'g denied,* 353 N.C. 399, 547 S.E.2d 2 (2001), and the consent agreement of the parties, which vested within this Court exclusive jurisdiction over the pension funds, the Court disagrees with Defendant's contention.

■ In *Brown,* the plaintiff in an equitable distribution action died shortly after filing her claim. *See id.* at 221, 539 S.E.2d at 622. The administratrix of the plaintiff's estate moved to be substituted for the plaintiff and to be allowed to proceed as the plaintiff in the case. *See id.* After explaining that equitable distribution actions "invariably contemplate divorce," *id.* at 223, 539 S.E.2d at 623, the North Carolina Supreme Court concluded that "when death ends all chance for divorce, any equitable distribution action then pending must abate," *id.* at 224, 539 S.E.2d at 624. Therefore, *Brown* instructs that equitable distribution proceedings are precluded in North Carolina upon the death of a spouse, where the spouses fail to divorce before the death. Given the *Brown* decision, the state court in this case is required to abate the equitable distribution proceeding due to Decedent's death, because the Davenports never divorced. For that reason, the

fact that an equitable distribution proceeding is currently pending in state court does not govern in favor of a stay.

■ Defendant's argument in favor of a stay is also unpersuasive in light of the consent agreement entered into by the parties. (Consent Order of Dismissal of Defs. and Third Party Pls.) Pursuant to this agreement, the parties agreed and the Court ordered that the Plan assets held in the names of Decedent and Plaintiff remain "under the *exclusive jurisdiction* of this court, pending the resolution of this federal court action, subject to payment of administrative fees, costs and expenses of the Plan." (*Id.* at 5) (emphasis added). Therefore, this Court currently has jurisdiction over the res at issue, that is, the pension funds, to the exclusion of the state court. Because the primary concern underlying the first factor of the *Colorado River* test is "avoiding the generation of additional litigation through permitting inconsistent dispositions of property," *Colorado River*, 424 U.S. at 819, 96 S.Ct. at 1247, the Court finds the fact that it has exclusive jurisdiction over the property at issue to govern against a stay.

### 2. Inconvenience of the Federal Forum

As to the second factor, that is, inconvenience of the federal forum, the Court will not afford any weight to this factor because Defendant concedes that it is "neutral in this case." (Third Party Def.'s Brief in Support of Motion to Stay.)

### 3. Avoidance of Piecemeal Litigation

■ As to the third factor, avoidance of piecemeal litigation, Defendant alleges that this factor weighs heavily in favor of a stay. Defendant bases this argument on its

assertion that the state court could, during the course of the equitable distribution proceeding, (1) enter a qualified domestic relations order assigning Plaintiff's surviving spouse benefits to Decedent's children, (2) effect a waiver of Plaintiff's surviving spouse benefits by issuing an abandonment order, or (3) equitably distribute the assets in a manner that will award a greater amount of the marital property to the Estate, if the pension funds are not included in the marital pot. According to Defendant, these possibilities pose a substantial risk of inconsistent results in state and federal court. However, the pending state court proceeding poses no substantial risk in this case for the following reasons.

■ First, the *Brown* decision mandates that the state court proceeding be dismissed.[4] Second, there is a minimal risk of inconsistent results because even if, despite *Brown,* parallel proceedings are held in state court on issues related to this case, the state court cannot issue any order that would impact this Court's ruling in any way. Specifically, as to the possibility of the state court issuing a *qualified* domestic relations order in favor of the Estate or Decedent's children, ERISA precludes such an issuance. According to ERISA, a domestic relations order is only "qualified," if, among other things, it gives an *alternate payee* the right to "receive all or a portion of the benefits payable *with respect to a participant* under a plan . . . ." 29 U.S.C. § 1056(d)(3)(B)(i)(I) (emphasis added). Because Plaintiff's surviving spouse benefits vested in Plaintiff upon Decedent's death, a post-mortem state court order allocating those benefits could only relate to a benefit payable *with respect to a beneficiary,* and not with respect to a participant. *See* 29 U.S.C.

4. Even by Defendant's own admission during its motion hearing, the North Carolina Supreme Court's decision not to overturn *Brown* on rehearing eliminates the possibility of inconsistent results or duplicative litigation.

§ 1056(d)(3)(B)(i)(I); *Hopkins v. AT & T Global Info. Solutions Co.,* 105 F.3d 153, 156 (4th Cir.1997) (citing *Dickerson v. Dickerson,* 803 F.Supp. 127, 132 (E.D.Tenn.1992) (holding that a participant's spouse may qualify as a beneficiary or an alternate payee, but not as a participant)).[5] Accordingly, any order issued by the state court at this point would not qualify as a QDRO and would not impact Plaintiff's rights to the spousal benefits.

■■■ Although the vesting point of surviving spouse benefits is a matter of first impression for this Court, the REA provisions evidence the fact that such benefits vest in the surviving spouse on the date of the participant's death. First, REA reenforces this conclusion by limiting the time period within which a participant can replace a QPSA—along with its surviving spouse benefits—with another form of benefit. *See, e.g., Hopkins,* 105 F.3d at 156–57 (concluding that the limited time period during which a participant can replace a survivor annuity is indicative of the vesting date); *Rivers v. Central & South W. Corp.,* 186 F.3d 681, 683 (5th Cir.1999) (same). Under REA, the participant can change a QPSA only during the period beginning when the participant attains age 35 and ending when the participant dies. *See* 29 U.S.C. §§ 1055(c)(1)(A)(i), (7)(B). In addition, the participant can only make such a change during that period with the written consent of the participant's spouse.[6] *See* 29 U.S.C. §§ 1055(c)(2)(A)(i), (7)(B); *Hopkins,* 105 F.3d at 157 (analyzing similar factors to conclude that a qualified joint and survivor annuity, a scheme under which the participant retires before death, vested at the time of the participant's retirement). Given REA's requirements, "[u]nless the form of benefit is properly changed prior to [death], the participant is locked into the [QPSA upon death]." *Hopkins,* 105 F.3d at 157. Thus, in this case, because Decedent did not elect to change the surviving spouse benefits before his death, Decedent is locked into his QPSA in its current form, including its provision of benefits for Plaintiff. The fact that the state court may not issue a valid QDRO at this point invalidates Defendant's argument that the state court's ruling with respect to a QDRO poses the risk of inconsistent results.

■■■ As to the issue of abandonment, Defendant asserts that if the state court finds that Plaintiff abandoned Decedent, a different beneficiary may be designated under Decedent's Plan, without Plaintiff's consent. The Court, however, disagrees. Despite the Secretary's promulgation as to the effect of an abandonment order on the need for a surviving spouse's consent, Defendant's contention must fail because the requirements for waiver have not been met. First, for a valid waiver, the partici-

5. As to the benefits to which Plaintiff is entitled as a Plan participant, Decedent's children could not qualify as alternate payees for QDRO purposes, in that Decedent's children, who are the offspring of Decedent's union with someone other than Plaintiff, are not Plaintiff's children or dependents, and Plaintiff owes no responsibility of support to them. *See, e.g., Boggs,* 520 U.S. at 847, 117 S.Ct. at 1763 (explaining that Congress was careful "in creating the QDRO mechanism to allow the spouse, former spouse, child, or other dependent of a participant" to be a plan beneficiary). Here, Decedent's children meet none of the criteria for alternate payee with respect to Plaintiff's benefits as a Plan participant. Given that a QDRO is impermissible with respect to Plaintiff's benefits as a Plan participant, from this point forward, the Court will only focus on Plaintiff's benefits as a surviving spouse in its analysis of whether a valid QDRO may be issued.

6. There are circumstances in which consent can be deemed waived, but none of those circumstances exist in this case. *See* 29 U.S.C. § 1055(c)(2)(B).

pant must have attained a court order of abandonment. *See* 26 C.F.R. § 1.401(a)–20, A–27. Indeed, no such order has been issued in this case. The Estate argues that the Court should stay this proceeding, nonetheless, so that the issue of abandonment may be determined by the state court and an order of abandonment issued if necessary. However, a stay on these grounds would serve no purpose in that a state court's post-death issuance of an abandonment order would not be valid under ERISA for waiver purposes for the following reasons.

First, ERISA provides that a participant's election to waive the surviving spouse pension—whether or not consented to by the spouse—must be made during the "applicable election period," 29 U.S.C. § 1055(c)(1)(A)(i), a period that "ends on the date of the participant's death," *id.* § 1055(c)(7)(B). Given that the statute requires the participant to make such an election before his death, which the participant did not do in this case, the Estate, attempting to stand in the place of Decedent, is unquestionably precluded from electing to waive the surviving spouse's rights after the point in time that Decedent would have been able to do so. The Court finds further support in the fact that, on July 29, 1999, Decedent executed a new will leaving his estate to his four children. At that time, Decedent could have sought a court order of abandonment if he so desired; however, he opted not do so. This suggests that Decedent did not necessarily intend to designate a different beneficiary under the Plan. For the foregoing reasons, even if the state court issues a post-death abandonment order, it will have no effect on the Court's determination of the proper beneficiary of the Plan assets in this case. Because the determinations that could possibly be made by the state court pursuant to ERISA are inconsequential to this Court's determination of the

proper beneficiary in this case, the possibilities of duplicative litigation and inconsistent results do not weigh heavily in favor of a stay.

### 4. Order of Jurisdiction

■■■ As to the Fourth factor cited by the Supreme Court in *Colorado River* for assessing the appropriateness of a stay, that is, the order in which the state and federal courts obtained jurisdiction, Defendant argues that this factor weighs heavily in favor of a stay because the equitable distribution action was filed prior to the action currently before this Court. However, the Supreme Court instructed in *Moses Cone* that the order in which jurisdiction was obtained should "not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." 460 U.S. at 21, 103 S.Ct. at 940. In this case, there seems to be an "apparent absence of any proceedings in the [state court], other than the filing of the complaint." *Id.* (quotations and internal quotation marks omitted). Moreover, the proceedings currently pending in state court will no longer be viable in light of the *Brown* decision. Defendant as much as admitted this fact in the hearing before this Court. Therefore, the fourth factor does not counsel in favor of a stay, contrary to Defendant's contentions otherwise.

### 5. Issues of Federal Law

Lastly, as to the factor established by the Court in *Calvert*, that is, whether the case involves issues of federal law, most issues presented by this case revolve around ERISA's provisions and interpretations thereof. In fact, the determination of whether an abandonment order can establish a waiver of the spouse beneficiary's rights is governed by ERISA; the deter-

mination of whether the state court can enter a valid QDRO is governed by ERISA; whether the state court is allowed to equitably distribute the pension plan benefits as marital property is governed by ERISA; and the determination of the proper plan beneficiary is, likewise, governed by ERISA. It is, therefore, apparent, as it was in *Calvert* and in *Moses Cone,* that this case involves federal issues. Moreover, because none of the other factors used to determine whether a stay should be granted weigh heavily in Defendant's favor, the Court finds that this case does not present the kind of exceptional circumstances warranting departure from the Court's "virtually unflagging responsibility" to exercise jurisdiction. *Moses Cone,* 460 U.S. at 15, 103 S.Ct. at 936 (internal quotation marks and quotations omitted). Therefore the Court will not grant a stay based upon the exceptional circumstances test.[7]

### B. The *Brillhart* Discretionary Test

■■ Because the exceptional circumstances test does not govern in favor of a stay in this case, the Court next turns to the alternative standard offered by Defendant in support of its Motion to Stay: the *Brillhart* discretionary standard. Defendant argues that the more lenient *Brillhart* standard applies in this case, because Plaintiff seeks, as part of her remedy, a Declaratory Judgment, pursuant to 28 U.S.C. § 2201, *et seq.*

■■ Under the *Brillhart* standard, the district court is authorized, in sound exercise of its discretion, to stay or dismiss an action seeking declaratory judgment before trial, or after all arguments have drawn to a close. *See* 28 U.S.C. § 2201(a); *Brillhart v. Excess Ins. Co. of Am.,* 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942), *reh'g denied,* 317 U.S. 704, 63 S.Ct. 23, 87 L.Ed. 562 (1942). The underlying issue to be resolved by a district court presented with a suit under the Declaratory Judgment Act is whether "the questions in controversy between the parties to the suit, and which are not foreclosed under the applicable substantive law, can better be settled in the proceeding pending in the state court." *Id.* at 495, 62 S.Ct. at 1176; *Wilton v. Seven Falls Co.,* 515 U.S. 277, 281, 115 S.Ct. 2137, 2140, 132 L.Ed.2d 214 (1995). To assist the federal courts in balancing the state and federal interests when a parallel state action is pending, the Fourth Circuit has articulated the following four factors for consideration: "(1) whether the state has a strong interest in having the issues decided in its courts; (2) whether the state courts could resolve the issues more efficiently than the federal courts; (3) whether the presence of overlapping issues of fact or law might create unnecessary entanglement between the state and federal courts;" and (4) whether the action in federal court is mere procedural fencing, in the sense that the action is the product of forum-shopping. *United Capitol Ins. Co. v. Kapiloff,* 155 F.3d 488, 493–94 (4th Cir.1998) (internal quotation marks and quotations omitted).

Applying these factors to the case at bar, the Court notes first that because the issues to be decided by judicial declaration are a matter of federal law, the state does not have a strong interest in having the issues decided in its courts. Specifically,

---

7. Although Defendant also alleges in support of its Motion to Stay that ERISA, though a federal statute, should be interpreted by the state court because of the state court's expertise in domestic law and its prior familiarity with the facts and personalities in this case, Defendant's argument is not persuasive given the limited degree of activity that has taken place in state court to date, and given that the issues central to this case do not revolve around domestic law, but instead, around an interpretation of ERISA.

ERISA controls all determinations to be made with respect to this matter, and the issues presented by this case are, therefore, primarily of federal concern. *See Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 45–46, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39 (1987) (explaining that "the express preemption provisions of ERISA are deliberately expansive and designed to 'establish pension plan regulation as exclusively a federal concern'") (quoting *Alessi v. Raybestos–Manhattan, Inc.,* 451 U.S. 504, 523, 101 S.Ct. 1895, 1906, 68 L.Ed.2d 402 (1981)).

Second, there is no indication that the state court could resolve the issues in this case more efficiently than this Court. In fact, the only matter currently pending in the state court is one for equitable distribution, thus suggesting that the federal action, given that it is more exhaustive in nature, would be more efficient in resolving all interested parties' rights. More specifically, most, if not all, issues related to the re-designation of the Plan's beneficiaries are to be decided by this Court's proceeding.

Third, because the equitable distribution proceeding must abate given the conclusions in *Brown,* potential entanglement between the federal and state courts is not a genuine possibility. Specifically, once the equitable distribution proceeding abates, the only matters remaining with respect to this case will be those currently before this forum.

Finally, there is no evidence of "procedural fencing." Instead, Plaintiff filed this action, which, notably, is based upon a federal question, to resolve questions of the type that are generally resolved in declaratory judgments. Without more, this Court does not find that this is an instance of forum-shopping. Indeed the evidence suggests to the contrary that this is a "reasonable assertion of [Plaintiff's]

rights under the declaratory judgment statute and under [federal question] jurisdiction." *Kapiloff,* 155 F.3d at 494. Given all of the foregoing facts, the Court, in its discretion, declines granting the stay requested by Defendant, despite the proceeding pending in state court.

For all of the foregoing reasons, Defendant's Motion to Stay [Document # 15] is DENIED. Accordingly, the Court next turns to Plaintiff's Motion for Judgment on the Pleadings [Document # 19].

## IV. *MOTION FOR JUDGMENT ON THE PLEADINGS*

 Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, a party is entitled to a judgment on the pleadings when no genuine issues of material fact exist, and the case can be decided as a matter of law. Fed.R.Civ.P. 12(c). A motion for judgment on the pleadings is intended to test the legal sufficiency of the complaint, and will operate to dispose of claims "where the material facts are not in dispute and judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noted facts." *Continental Cleaning Serv. v. United Parcel Serv., Inc.,* 1999 WL 1939249, *1 (M.D.N.C. Apr.13, 1999) (internal quotation marks and quotations omitted). Taking the nonmoving party's allegations as true, dismissal is inappropriate unless it is clear that the non-moving party can prove no facts sufficient to support his claim for relief. *See Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984).

 The matters presently before this Court for judgment are as follows: (1) whether the participant benefits and surviving spouse benefits under the Plan are rightfully Plaintiff's; (2) whether Plaintiff's benefits are inalienable; (3) whether state

laws allowing the alienation of Plaintiff's benefits are preempted by ERISA; and (4) whether the Plan benefits can be distributed as marital property during the equitable distribution proceeding currently pending in state court.[8] In light of the matters for which judgment is sought in this case, no genuine issues of material fact exist. Specifically, it is undisputed that Plaintiff is the surviving spouse of Decedent, that Plaintiff was a participant in the Plan, that the Plan provides for a surviving spouse benefit, that Plaintiff did not consent to alienating her benefits under the Plan, that a QDRO has not been issued, and that no abandonment order was entered before Decedent's death. These facts are the only facts relevant to the matters presently before the Court for judgment. Because no genuine issue exists with respect to these material facts, judgment may be rendered as a matter of law. For the foregoing reasons, Plaintiff's Motion for Judgment on the Pleadings [Document #19] is GRANTED. The Court next turns to the ERISA questions for which judgment is sought.

As to the first issue presented for judgment, that is, whether both the participant benefits and the surviving spouse benefits are rightfully Plaintiff's, the Court concludes that Plaintiff is the named beneficiary with respect to such benefits and is entitled to said benefits for all of the reasons discussed at great length in this opinion. These benefits should, therefore, be turned over to Plaintiff in the amount specified by the Plan.

As to the second issue, whether Plaintiff's benefits are inalienable, ERISA precludes alienation of Plaintiff's benefits absent a valid QDRO or waiver. Because a QDRO cannot be entered in this case, and because Decedent failed to effect an appropriate waiver by means of a pre-death abandonment order, Plaintiff's benefits are inalienable. This fact leads to the Court's judgment with respect to the next two issues, which is, that any state court order permitting a QDRO or any other equitable distribution of Plaintiff's pension benefits is preempted by ERISA. As the foregoing discussion indicates, any such orders, to be valid under ERISA, had to be entered prior to Decedent's death.

## V. ATTORNEY'S FEES

The parties have requested that the Court, in its discretion, determine to whom attorney's fees should be awarded. ERISA provides that a "court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). Given the permissibility of attorney's fees and costs under ERISA, the Fourth Circuit has established a five-factor test to determine whether attorney's fees should be awarded for actions brought pursuant to the statute. See Metropolitan Life Ins. Co. v. Pettit, 164 F.3d 857, 865–66 (4th Cir.1998); Quesinberry v. Life Ins. Co. of North Am., 987 F.2d 1017, 1028–29 (4th Cir.1993) (en banc). These factors are as follows: "(1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing party to satisfy an award of attorney's fees; (3) whether an award of attorney's fees against the opposing parties would deter other persons acting in similar circumstances;" (4) whether the party seeking attorney's fees "sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions." Metropolitan Life, 164 F.3d at 865–66. "This five factor approach is not a rigid test, but rather provides general

---

8. Defendant requested judgment on this issue.

guidelines for the district court." *Quesinberry*, 987 F.2d at 1029 (citations omitted).

After having considered each of these factors and having applied them to the facts in this case, the Court, in its discretion, will not award attorney's fees to any party, primarily because neither party has alleged or provided any evidence of bad faith or culpability on the part of another party. Accordingly, to the extent that the parties seek attorney's fees, that request is DENIED.[9]

## VI. CONCLUSION

For the foregoing reasons, Defendant's Motion to Stay [Document #15] is DENIED, Plaintiff's Motion for Judgment on the Pleadings [Document #19] is GRANTED, and the Court determines in its discretion not to award attorney's fees to any party. IT IS THEREFORE ORDERED that Plaintiff is entitled to her Plan benefits both as a Plan participant and as a surviving spouse; Plaintiff's benefits under the Plan are inalienable; and any state court order permitting a QDRO or any other type of equitable distribution of the Plan's benefits is preempted by ERISA. IT IS FURTHER ORDERED THAT an amount equal to that provided in the Plan for Plaintiff's benefits as a surviving spouse and as a Plan participant shall be distributed to Plaintiff.

An ORDER AND JUDGMENT consistent with this MEMORANDUM OPINION will be filed contemporaneously herewith.

---

**9.** Although the Court notes that the merits of Plaintiff's position outweigh those of the other parties, the Court elects in its discretion to deny attorney's fees to Plaintiff, nonetheless, because Defendant and the other defendants named in this case sought to resolve a significant legal question regarding ERISA, that is, the ability of a state court to equitably distribute pension plan benefits in light of ERISA, and the effect of a post-mortem state court order on the surviving spouse's benefits.